GEORGE KUESTNER, CONTESTANT-RESPONDENT, v. JOHN
J. BOSCARELL, INCUMBENT-APPELLANT.

WILLIAM C. COOK, CONTESTANT-RESPONDENT, v. WIL-
LIAM C. HENDRICKSON, INCUMBENT-APPELLANT.

Argued January 31, 1927—Decided March 2, 1927.

Elections—Paster Ballots—Recount—Appeal to Circuit Court—
Bond on Appeal—Recount Reversed by the Election Board—
Contestant Appealed to Circuit Court, Where Another Re-
count was Had Which Reversed the County Board's Recount
—Appeal to This Court on Ground That Bond to Circuit
Court Had Not Been Approved According to Statute, in
That it Had Been Approved by Circuit Court Judge Instead
of Supreme Court Justice—Held, That Bond was Defective
and That Circuit Court Judgment Must be Reversed.

On appeal from the Mercer County Circuit Court.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the appellants, *Philip Forman* and *John J. Boscarell*.

For the respondents, *Romulus P. Rimo*.

PER CURIAM.

The above are two appeals in contested election cases. At
the general election in November, 1926, there were two
vacancies in the office of township committeemen in the town-
ship of Ewing, in the county of Mercer, to be filled by the
voters. One vacancy was for a three-year term. The other
vacancy was for a two-year term. The Democratic party
nominated no candidates for these offices. The Republican
party nominated at the primary election one George Kuestner
for the two-year term, and one William C. Cook for the three-
year term. Subsequent to the primary election, but prior to
the general election, two men announced their intention of
becoming candidates for these offices. William C. Hendrick-

son declared himself a candidate for the three-year term. John J. Boscarell declared himself a candidate for the two-year term. They called themselves independent candidates. Their names could not be printed upon the official ballot. They undertook, however, what is known as a paster campaign. The method followed was to distribute among the voters of the township strips of gummed paper with their names printed thereon. In the personal choice column of the official ballot were printed the offices to be filled. In the personal choice column the ballot in part read: "For township committee, three-year term," "For township committee, two-year term." Spaces under each designation appeared on the ballot. It was the intention of the independent candidates and their supporters that the name of William C. Hendrickson printed on the paster should be placed under the designation "For township committee, three year term," and the name of John J. Boscarell printed on the paster should be placed under the designation in the personal choice. column "For township committee, two-year term."

The election was held on November 2d, 1926. The usual confusion incident to a campaign of this character occurred in the election. A dual paster had been prepared containing the names of Messrs. Hendrickson and Boscarell, which had been perforated so as to be readily separable. It was the intention that it should be so separated before using. In many instances it was pasted on the ballot without separation so as to cover up the designation of the office for which Boscarell was a candidate. In other ballots the pasters were not placed in the personal choice column but placed over the names of the Regular Republican candidates. In some ballots the pasters were placed in the personal choice column beneath the designation of offices other than township committeemen which were to be filled. In some ballots the Democratic column was used to place the pasters of the independent candidates. There were other ballots in which the voter, after having used the paster in the proper column and proper manner, had crossed out the names of the Regular Republican candidates in order to emphasize as it were his or

her intention of supporting Hendrickson and Boscarell. Other ballots displayed other idiosyncrasies.

There are four election districts in Ewing township. The district election boards rejected many of the ballots cast. The announced result was that George Kuestner (Regular Republican candidate) was declared elected for the two-year term, and William C. Cook (Regular Republican candidate) was declared elected for the three-year term. The independent candidates, Hendrickson and Boscarell, then presented a petition to Mr. Justice Trenchard, of the Supreme Court, for a recount of the ballots. A recount was ordered and conducted upon November 23d and 24th, 1926, by the county board of elections. The result of this recount was that the county board of elections declared that William C. Hendrickson had been elected for the three-year term over William C. Cook, and that John J. Boscarell had been elected for the two-year term over George Kuestner. No ballots were referred to Mr. Justice Trenchard to be passed upon by him for the reason that the county board of elections had no divergence of view regarding any disputed ballot. As a result of the recount Hendrickson and Boscarell became the incumbents.

Messrs. Kuestner and Cook, under article 27 of the Election law, then filed petitions addressed to the Circuit Court of Mercer county for the purpose of contesting the election of Messrs. Boscarell and Hendrickson. Each contestant filed a separate petition. Each petition embodied the same subject-matter. In the record only one of the petitions is printed. This was done by consent. The hearing was had before Judge Jess of the Circuit Court on the 17th, 20th and 23d days of December, 1926. It became necessary during the hearing to recount the ballots. The disputed ballots were passed upon by the court. The result of the contest was the entry of a judgment that George Kuestner was elected over John J. Boscarell for the two-year term, and William C. Cook over William C. Hendrickson for the three-year term. Within the time prescribed by the statute Boscarell and Hendrickson, the incumbents, appeal to this court.

The first point advanced by the appellants for a reversal of the judgments is that the Circuit Court had no jurisdiction to act in these cases because of the failure of the petitioners (Kuestner and Cook) to give the bond required by the Election act. Section 3, article 27 of the Election law (*Pamph. L.* 1921, *p.* 589) reads:

"Said petition shall be accompanied with a bond to the incumbent with two or more sureties to be approved by the justice holding such circuit, in the penal sum of $500, conditioned to pay," &c.

The bonds given by each of the contestants were approved, not by the "justice holding such circuit," but by Judge Jess, who is a judge of the Circuit Court. The bond given by William C. Cook to Hendrickson is printed on pages 16, 17 and 18 of the record. It shows that it was approved by "Frank B. Jess, Judge Circuit Court."

This question has been passed upon in the case of *Wadsworth et al.* v. *Harrison,* 46 *N. J. L. J.* 329. Judge Dungan (Circuit Court judge) rendered the opinion. As stated in the opinion the first ground urged for the dismissal of the petition was:

"That the Circuit Court was without jurisdiction to make an order fixing the time of this hearing, and is now without jurisdiction to hear and determine the questions involved in the petition, for the reason that no bond was presented with the petition, as required by section 3 of article 27 of the Election act, found on page 782."

When this point was considered by Judge Dungan he said:

"Under the first point, as to whether or not all the steps taken were sufficient to give the court jurisdiction, I would say that in these arguments there has been no suggestion that this court has any power under the common law to hear and determine such a proceeding as this. As was said in the case of *Darling* v. *Murphy,* to which reference has been made many time during the argument, found in 70 *N. J. L.* 435, Mr. Justice Swayze, speaking for the court, says: 'The proceeding is purely statutory, and in order that the court may have jurisdiction the statute must be complied with.' And I

think it is not objectionable to insert the word 'strictly,' and to say that the statute must be *strictly* complied with. One of the jurisdictional acts in order to confer upon this court the power to hear and determine this matter is that with the petition there shall be presented a bond; to use the words of the statute, 'said petition shall be accompanied with a bond to the incumbent with two or more sureties to be approved by the justice holding such circuit in the penal sum of $500, conditioned,' &c. One of the objections made to the bond was that it is executed by a surety company instead of by two sureties, as required by this section; but I think that objection is fully covered by the statute to which reference has been made, and counsel in the case indicate that they acquiesce in that view. But whether or not the other requirement has been complied with is seriously disputed. The bond was approved by a judge of the Circuit Court, not by a justice of the Supreme Court; but it is insisted on behalf of the petitioners that the words 'justice holding such circuit' would comprehend the judge of the Circuit Court, and does not necessarily mean that it must be approved by a justice of the Supreme Court, and counsel calls attention to the inconsistency which a construction that it means the justice of the Supreme Court would give rise to. I fail to see any inconsistency in such a construction, because, as suggested during the argument, it was quite proper that the petition should have been presented to the judge of the Circuit Court for the fixing of a day for such a hearing, and that prior thereto there should have been obtained from a justice of the Supreme Court his approval of the bond, which could have accompanied the petition when it was presented to the Circuit Court judge, as stated in the act, if the approval of the justice of the Supreme Court be necessary, and I am inclined to think that that is just what it means. As I have gone very carefully through this act I find that whenever a justice of the Supreme Court is intended the act so provides; when a judge of the court is intended it is so indicated. Some sections speak of action being taken by the judge or justice of the Supreme Court, 'judge' evidently meaning 'judge of the

Circuit Court,' and 'justice of the Supreme Court' meaning just what it says. So, there was no confusion, apparently, in the mind of the author of this act, or of the legislature in passing the act, as to whether or not it is a judge or a justice of the Supreme Court upon whom they confer the powers set forth in the act. Section 3 of article 27 speaks of the determination of such a matter as this by the Chief Justice, or a justice of the Supreme Court, where the office or proposition involves the entire state or more than county. In the next paragraph of that section, it is stated that 'in all other cases it shall be heard and determined by the Circuit Courts.' The justices of the Supreme Court assigned to the several counties are the justices holding the circuits. The Circuit Court judges are not justices; they are judges; and the term 'justice,' I think, does not include the Circuit Court judge. As has already been suggested, the presentations to the Circuit Court judge, at the time of the presentation of the petition of a bond properly approved—approved according to the provisions of the act—by the justice holding the Essex County Circuit, was an absolute necessity to confer upon the Circuit Court judge jurisdiction to fix a day and to try and determine this case.

"That view alone necessarily results in the dismissal of these petitions, * * *."

We consider the reasoning of Judge Dungan as above expressed unanswerable. The legislature has prescribed a method of procedure to be followed by one who desires to contest the result of the election. To give the court jurisdiction the method prescribed by the legislature must be followed. Courts have no power to change or ignore the procedure fixed by the legislature.

The contestants seek to avoid the effect of this statute by claiming that the provision relating to the approval of the bond was waived by the incumbents. This was the view taken by Judge Jess. In the record (on *p.* 92) Judge Jess said:

"* * * I am inclined to agree with the opinion of Judge Dungan, that the act requires that the bond to be filed by the

contestants to the incumbents shall be approved by a justice of the Supreme Court. It clearly says so, and I think there can be no doubt about that.

"But I am further inclined to feel that this objection, while it might have been valid and controlling at the outset of this case, now comes too late. It think that this is a jurisdictional fact which the parties may waive. I can see no reason why not, if they come into court knowing, as, of course, they are presumed to know, that the bond is defective in the matter of its approval, and remain silent as to that objection and permit the proceedings to go on to the extent that several hundred ballots are counted, that is too late, practically at the close of the case, to raise that objection."

It is true that the objection was not made at the commencement of the hearing upon the appeals. It was made, however, before the hearing had been concluded and a decision rendered by the court. The position taken by the Circuit judge is that if counsel fail at the very threshold of the hearing to call the court's attention to a defect in the procedure which affects the jurisdiction of the court, such failure precludes the consideration of the question if raised during the hearing, and the parties are deemed to have waived the question of jurisdiction. Such a position makes it necessary for counsel to know on the occasion of their first appearance every fact affecting the jurisdiction of the tribunal and the law applicable to it. It may well be that at his first appearance on this appeal counsel for the incumbents may not have had an opportunity to inspect the bond which had been tendered to the Circuit judge. Counsel was warranted in assuming that all the acts essential to confer jurisdiction on the judge had been complied with. Whether the bond was approved by a justice of the Supreme Court was a question of fact, and, so far as it appears, when counsel was apprised that the bond was not approved by a justice of the Supreme Court the question of jurisdiction was raised. Assuming that the jurisdictional fact lacking, namely, the approval of the bond "by the justice holding such circuit" could be waived, we do not think it was waived in the present case.

The more serious question, however, presented is whether the failure to have the bond approved in the manner prescribed by the statute is a matter which can be waived. To give the Circuit Court jurisdiction of the subject-matter, to wit, the appeal, one of the things required by the statute to be done was the approval of the bond in the manner mentioned. Unless this requirement was complied with as well as the other requirements made mandatory by the statute, the Circuit Court had no jurisdiction to hear the appeals. Jurisdiction of the person may be waived by appearance before a tribunal having jurisdiction of the subject-matter and participation in a trial. *State* v. *Rosenblum*, 3 *N. J. Adv. R.* 1713. While courts can obtain jurisdiction of person by the person's consent, jurisdiction of the subject-matter cannot be obtained by a court by consent of parties. This distinction has been recently thoroughly considered by the Court of Errors and Appeals in this state in the case of *State* v. *Baker*, 4 *N. J. Adv. R.* 1219. We hold that by reason of the failure of the contestants to have the bond approved in the manner provided in the statute, the Circuit Court had no jurisdiction of the appeals and could not determine the same. This view makes it unnecessary to consider the other questions argued or briefed. Where an appellate court is without jurisdiction of the subject-matter of an appeal the only judgment it can enter is one dismissing the appeal. *Sena* v. *United States*, 147 *Fed. Rep.* 485; *Ex parte McCardle*, 7 *Wall.* (*U. S.*) 506.

The judgments entered in the Circuit Court are reversed with the direction to enter judgments dismissing the appeals.