LOUIS HELLER, ASSIGNEE OF B. & S. EXCAVATING AND CONSTRUCTION COMPANY, A CORPORATION, PLAINTIFF, v. CITY OF PLAINFIELD, DEFENDANT.

Decided December 10, 1936.

For the plaintiff, *Aaron Heller*.

For the defendant, *William Newcorn*.

WOLBER, C. C. J. This case was submitted to the court on a written stipulation of facts, a jury having been waived. It appears that on November 7th, 1930, the defendant, the city of Plainfield, entered into an agreement with the Angelo Paino Construction Corporation for the construction of a storm sewer for the sum of $175,895.05. Plaintiff's assignor was a subcontractor on the same project.

On April 23d, 1931, plaintiff's assignor served a notice on the city clerk of the city of Plainfield for the sum of $5,275.42 for labor and materials furnished on the job to the said Angelo Paino Construction Corporation, which was filed in the office of the city clerk on that date. On the same date, the city clerk notified the city treasurer of the filing of said stop-notice, and the treasurer entered the same in the lien book of the city of Plainfield, in accordance with the statute. Thereafter the city served a written notice on the Angelo Paino Construction Corporation in compliance with section 7 of "An act to secure the payment of laborers, mechanics, merchants, traders and persons employed upon or furnishing materials toward the

performing of any work in cities, towns, townships and other municipalities in this state (Revision of 1918). *Pamph. L. 1918, ch. 280, p. 1041."* 1 *Cum. Supp. Comp. Stat., p.* 1861, § 126-57. The Angelo Paino Construction Corporation thereupon notified the municipality that it disputed the lien claim filed by the plaintiff's assignor and tendered a bond of the Union Indemnity Company for double the amount of the claim filed, which bond was approved by the corporation counsel of the city of Plainfield. After such approval, the city clerk notified the city treasurer, the financial officer of the city of Plainfield, that the Angelo Paino Construction Corporation had filed in the city clerk's office the above described bond. For some reason the city treasurer never affixed his formal approval to this bond.

After the filing of the bond, the city of Plainfield made payments to the contractor, Angelo Paino Construction Corporation, and eventually it became involved in difficulties and was adjudicated a bankrupt. The Union Indemnity Company, the surety on the bond, was declared insolvent on January 7th, 1933.

This action is brought by plaintiff, who is the assignee of the creditor of the Angelo Paino Construction Corporation, which had filed the stop-notice above described, and for which the bond was delivered. The theory of this action is that since the statute required the approval of the bond by the financial officer (city treasurer) with whom it was filed, which admittedly was not complied with, the bond was void and therefore the payments by the city of Plainfield to the contractor contravened the rights of this plaintiff, and he seeks to recover the amount which he would have received in the event that the bond had not been accepted by the municipality.

Section 5 of "An act to secure the payment of laborers, mechanics, merchants, traders and persons employed upon or furnishing materials toward the performing of any work in cities, towns, townships and other municipalities in this state (Revision of 1918). *Pamph. L.* 1918, *ch.* 280, *p.* 1041," *supra,* pertinent to this controversy, provides (at *p.* 1860, section 126-55) :

"5. The lien shall attach from the time of the filing thereof to the extent of the liability of the contractor or subcontractor, as the case may be, for the claim preferred upon any funds which may be due or to grow due to the said contractor from the municipality under the contract against which the lien is filed. Provided, however, that the funds due or to grow due to the said contractor from said city, town, township or other municipality may be released and paid to the said contractor by the financial officer of said city, town, township or other municipality upon the filing with said financial officer of a bond in double the sum of all claims filed under the provisions of this act against the said contract or the funds due or to grow due thereunder conditioned for the payment of such sum or sums as may be decreed to be due under any such claims, *which bond shall be approved as to form* by the chief law officer of such municipality and *as to sufficiency* by the *financial officer with whom it is filed*. *Pamph. L.* 1918, *ch.* 280, *p.* 1043." (Italics added.)

As appears, the matter is entirely statutory. While the object of the statute is to secure payment of persons employed upon or furnishing materials toward municipal works, it also embraces a purpose to prevent the interruption of municipal construction by the claims of creditors thereby secured. It is designed to benefit the municipality as well as the persons employed or furnishing materials for public works. The filing of the bond, as appears, is a statutory substitute to the creditors of the fund represented and held by the municipality. The requirement for approval is to insure a good and responsible surety. When the bond is filed, the creditors are protected; the municipality is protected from creditors; the contractor upon filing the bond receives his money due him under the terms of the contract and enables him to proceed with the construction of the work under his contract with the municipality. The bond, of course, is required to be a reliable and sufficient one. That is the reason for approval as to form and sufficiency. The test of sufficiency in this case must be determined as of the date of delivery, and not by subsequent events. On the date of delivery of the bond to the defendant municipality, it was apparently sufficient. The failure to

approve the bond by the treasurer was not the cause of the plaintiff's loss. The failure to approve was a formal ceremony that did not contribute to the insolvency of the surety. This is not the case where the defendant is to be held because of avoidance caused by a defect in substance. Even in such an instance, in a suit against the surety, the bond, although not in accordance with the statutory terms and not prohibited by the statute, is nevertheless valid and enforceable as a common law voluntary bond. *Emanuel* v. *McNeil* (*Court of Errors and Appeals,* 1915, *Walker, C.*), 87 *N. J. L.* 499; 94 *Atl. Rep.* 616.

This action, as appears, is based upon the failure of approval of the bond by the treasurer as to sufficiency after delivery. It is to be distinguished from such cases as *Wadsworth* v. *Harrison,* 46 *N. J. L. J.* 329, referred to at some length in *Kuestner* v. *Boscarell* (*Supreme Court,* 1927), 5 *N. J. Mis. R.* 303; 136 *Atl. Rep.* 506, *per curiam;* because in those cases there was involved an election contest, wherein jurisdiction of the Circuit Court to act in the matter depended upon the approval of a bond by a Supreme Court justice, and not by a Circuit Court judge, as was done there. Because of the failure to approve a required bond by the proper statutory officer, the court had no jurisdiction to hear and determine the election contest.

In this case, the plaintiff relies upon the fact that the bond was a nullity because of the non-compliance with the provision as to approval by the municipal financial officer. The plaintiff's grievance in this case is that the city accepted the bond in the first place, but assigns as his cause of action that the bond was not technically approved by the city treasurer. Of course, the city had a right to accept a bond under the statute. It was a matter for its own protection. The city was not harmed by its failure to approve; the plaintiff was not harmed by the failure to approve. The loss resulted only because of the insolvency of the surety.

In *Sooy* ads. *State* (*Supreme Court,* 1876), 38 *N. J. L.* 324, Beasley, Chief Justice; *affirmed* (*Court of Errors and Appeals,* 1879), 41 *Id.* 394, Dixon, J., a similar contention as to the invalidity of a state treasurer's bond, which was

required to be approved by the legislature, was held without force or merit. In that case, Chief Justice Beasley stated (at *p.* 334):

"The act with respect to this ceremony of approval is clearly directory, and its non-observance cannot affect the validity of the instrument. It is suggested in the brief of counsel that this legislative approval is an indispensable part of the acceptance of the obligation; if this be so, the result would be that the bond never had any existence, the delivery not being complete, and the defense would be appropriate under the plea of *non est factum.* But I do not think there is any substance even in this suggestion; the bond may be obligatory, even if it has never been approved by the legislature. This plea cannot be sustained."

This is the general rule in all cases with respect to the approval of bonds. 9 *C. J.* 26, § 39:

" 'Statutes requiring bonds to be approved by certain officials are not for the purpose of protecting the obligors in the bond, but are aimed to protect the public, to insure their solvency, and to create evidence of an unimpeachable character of the fact of their execution. When they are executed for a legal purpose, before a proper tribunal, and are in fact accepted and approved by the officer or body whose duty it was to approve them, it could serve no useful purpose of the law to hold them invalid, to release all the obligors thereon, and to defeat every purpose of its execution, simply because the fact of approval was not endorsed precisely as had been directed by the legislature.' *American Book Co.* v. *Wells,* 83 *S. W. Rep.* 622, 627; 26 *Ky. L.* 1159."

I believe that non-compliance with the statutory provision as to approval of the bond as to sufficiency by the city treasurer was an omission which did not affect the validity of the bond, and therefore the defendant is entitled to a verdict of *no cause of action.* I will sign a *postea* embodying this result upon its presentation.